**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Vint, | No. CV09-00078-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Element Payment Services, Inc., a Nevada Corporation; Dan Erickson, an Arizona Resident, | |
| Defendants. | |

On May 13, 2009, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. #23. Plaintiffs have responded and Defendants have replied. Dkt. ## 24, 25. For the reasons that follow, the Court will grant the motion in part and deny it in part.

**I.     Background.**

Plaintiff Timothy Vint began employment with Defendant Element Payment Services, Inc., in April 2004. Dkt. #1, ¶ 7. As part of his compensation, Plaintiff received shares of stock in Element. Dkt. #1, ¶ 8. In March 2007, Element terminated Plaintiff's employment. Dkt. #1, ¶ 9. Plaintiff and Element then entered into a Stock Repurchase Agreement ("Stock Agreement") whereby Element acquired Plaintiff's outstanding stock in the company. Dkt. #1, ¶ 10. The Stock Agreement was signed in conjunction with a Promissory Note (the "Note") which obligated Element to pay Plaintiff $10,000 per month for 28 months, totaling

$280,000. Dkt. #1, ¶¶ 10-11. Plaintiff then sought assurances from Defendants that Element would continue making payments on the Note if Plaintiff assigned his interest in the Note to a third party, PFC Payment Solutions LLC. Dkt. #1, ¶ 24. Defendant Erickson, holding himself out as President of Defendant Element, indicated in writing, via e-mail to Plaintiff, that Element would continue to make payments on the Note if Plaintiff assigned his interest in the Note to PFC. Dkt. #1, ¶ 31.

Thereafter, Plaintiff entered into an Assignment and Assumption Agreement ("Assignment") with PFC in September 2007 whereby Plaintiff received $190,000 in exchange for his rights to the remaining $260,000 due under the Note from Element. Dkt. #1, ¶ 14. Under the terms of the Assignment, Plaintiff received $140,000 immediately and was entitled to receive an additional $50,000 in March 2008, contingent upon PFC's continued receipt of regular monthly Note payments from Element. *Id.* As further security on the Assignment, Plaintiff personally guaranteed PFC that Element would continue making payments on the Note and put up his interest in a business in Texas as collateral. *Id.* In January 2008, Element's counsel informed Plaintiff and his counsel that Element would not continue making monthly payments on the Note to PFC and Element failed to make the January 15, 2008 payment due to PFC under the Note. Dkt. #1, ¶ 16. Apparently in an effort to avoid being sued by PFC, Plaintiff then paid PFC $10,000 per month for three consecutive months in fulfillment of the obligation owed to PFC under the Note. Dkt. #1, ¶ 17. After three months, Plaintiff made no further payments to PFC. *Id.* Because PFC failed to receive all payments to which it was entitled under the Note, PFC did not pay the additional $50,000 that Plaintiff would have otherwise received in March 2008 under the terms of the Assignment. *Id.*

Plaintiff has filed his first amended complaint in this Court. Dkt. #1. Plaintiff asserts claims for contribution, promissory estoppel, fraud by intentional misrepresentation, and fraud by negligent misrepresentation. *Id.*

## II. Legal Standard.

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 2009 WL 1361536, at *13 (U.S. May 18, 2009) (citing *Twombly*, 550 U.S. at 556).

The court may not assume that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## III. Choice of Law.

Defendants contend that Arizona law should govern the present dispute because of the choice of law provision in the Stock Agreement. Dkt. #23 at 7 n.3; Dkt. #25 at 6. Plaintiff responds by arguing that his claims are not brought pursuant to the Stock Agreement and that the agreement's choice of law provision does not control. Dkt. #24 at 7.

Defendants' reliance on the choice of law provision in the Stock Agreement is misplaced. Each of Plaintiff's claims against Defendants relate to a separate statement that the Defendants allegedly made to Plaintiff independently of the existing contractual relationship between the parties. As a result, the Plaintiffs' claims in equity and in tort do not arise out of the Stock Agreement. Defendants' citation to *Nedlloyd Lines B.V. v.*

*Superior Court*, 834 P.2d 1148, 1153-54 (Cal. 1992) is not persuasive. In *Nedlloyd Lines*, the plaintiff asserted a cause of action for breach of fiduciary duty and the court found that the fiduciary duties, if they existed, could only exist because of the contractual relationship between the parties. *Id.* Here, unlike in *Nedlloyd Lines*, the Plaintiff has asserted causes of action based on statements of Defendants separate from the Stock Agreement, and the Plaintiff's theories of liability in this case do not require the existence of that contract.

The Court nonetheless finds that Arizona law applies to this case. "In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003). Arizona has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *See Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988); *Garcia v. General Motors Corp.*, 990 P.2d 1069, 1075-76 (Ariz. Ct. App. 1999). Under this test, the law of the state that has the most significant relationship to an issue will apply to that issue. *Id.*

Arizona is the forum with the most significant relationship to the present dispute. The Affidavit of Defendant Erickson, attached as an exhibit to Defendants' motion, states that Plaintiff lived and worked in Arizona during his employment relationship with Defendant and that the Stock Agreement and Note were drafted by Element's Arizona counsel. Dkt. #23 at 20-21. Plaintiff does not contest these statements and has not argued that any other forum has a more significant relationship to the current dispute than Arizona. As a result, Arizona law governs this case.

**IV.  Analysis.**

    **1.  Count One - Contribution.**

Defendants argue that Plaintiff's claim for contribution should be dismissed because Arizona's codification of the Uniform Contribution Among Tortfeasor's Act, A.R.S. § 12-2501(A), does not allow for contribution where a plaintiff has not been "held liable for personal injury or property damage" to another. Dkt. #23 at 10.

1    Defendants misinterpret A.R.S. § 12-2501(A) to require that a plaintiff have been
2 "held" liable before he can pursue a claim for contribution. Dkt. #23 at 10. The plain
3 language of section 12-2501(A) shows that a plaintiff may pursue a right of contribution
4 among those with whom he is jointly or severally liable "even though judgment has not been
5 recovered against any or all of them." *See also* 12 Williston on Contracts § 36:14 (4th ed.)
6 (stating that when one party defaults on an obligation for which two parties are jointly or
7 severally responsible, the other party may pay the debt without waiting to be sued and may
8 then have recourse against the defaulting party). Moreover, contribution is not always
9 limited to joint tortfeasors. It can be available between coguarantuours and sureties who pay
10 more than their pro rata share of a common liability. *Id*; *see also* Restatement (First) of
11 Restitution § 81 cmt. b (1937) (stating that contribution may be available to a party
12 secondarily responsible for performance of a duty against the party primarily responsible for
13 the obligation).

14    Neither party has directed the Court to any cases indicating whether a right of
15 contribution is available in Arizona to a party that is mutually liable with another *for a*
16 *breach of contract*, as opposed to liable with another in tort. The Court cannot conclude at
17 the preliminary stage that Plaintiff's contribution claim is legally defective. If the parties
18 choose to address this claim at the summary judgment stage, they should cite relevant
19 Arizona authority.

20    **2.    Count Two - Promissory Estoppel.**

21    Defendants argue that Plaintiff's claim for promissory estoppel should be dismissed
22 because of the existence of the Stock Agreement – the enforceable contract between the
23 parties – and various legal remedies that Plaintiff may have against PFC. Dkt. #23 at 10-11.
24 Defendants claim that when a contract exists between two parties, one party may not use
25 promissory estoppel to enforce the terms of that contract against the other party. Dkt #23
26 at 11 (citing *Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 615 (Ariz. Ct. App. 1998)).
27 Defendants further claim that when one party has other viable legal remedies, a cause of
28

action for promissory estoppel will not be available. *Id.* (citing *Glen Holly Entm't Inc. v. Tektronix Inc.*, 352 F.3d 367, 381 (9th Cir. 2003)).

Under Arizona law, promissory estoppel is unavailable where the parties have reduced their agreement to an enforceable contract. *Johnson Int'l*, 967 P.2d at 615. However, the promise that forms the basis for Plaintiff's promissory estoppel claim is different from the promise that is formalized in the Stock Agreement between Element and Plaintiff. Plaintiff does not claim that he relied to his detriment on the promises made to him in the Stock Agreement. Instead, Plaintiff claims that he was induced to assign his rights in the Note to PFC based on Defendants' subsequent promise to him that Element would continue making payments under the Note if Plaintiff assigned it to PFC. Dkt. #24 at 16. Plaintiff claims that his justifiable reliance on this subsequent promise caused him harm. Dkt. #24 at 7-8, 16. *Johnson International* does not bar Plaintiff from stating a cause of action for promissory estoppel that arises from a promise Defendants made to Plaintiff over and above the terms of the Stock Agreement.

Defendants' argument that Plaintiff's other available legal remedies bar his claim for promissory estoppel is not persuasive. The fact that Plaintiff may have a viable cause of action against a third party, PFC, does not bar Plaintiff from seeking remedies for the wrongs allegedly done to him by Defendants. Defendants' citation to *Glen Holly Entertainment*, 352 F.3d at 381, does not assist its argument. In *Glen Holly*, the Ninth Circuit approved the dismissal of the plaintiff's promissory estoppel claims upon finding that the plaintiff had other available remedies *against the defendant*. *Id*. Defendants here have not suggested that Plaintiff's promissory estoppel claim should fail because of other viable remedies Plaintiff has against Defendants.

The Court notes that section 90 of the Restatement (Second) of Contracts indicates that the proper remedy in a promissory estoppel action is "enforcement of the promise," but that such a remedy should be "limited as justice requires." The parties have not briefed, and the Court will not address, whether an award of damages to Plaintiff for monies not paid to him by PFC under the terms of the Assignment is an appropriate remedy for Defendants'

- 6 -

1 alleged failure to perform on their promise to make payments on the Note after its
2 Assignment. Further briefing on this issue will likely be required at the summary judgment
3 stage of the litigation. However, at this stage, the Court cannot conclude that the complaint
4 fails to state a claim for promissory estoppel.

### 3. Count Three - Fraud by Intentional Misrepresentation.

Defendants argue that Plaintiff's claim for intentional fraud should be dismissed because the facts in the complaint are insufficient to state a claim that Defendants *intended* to defraud Plaintiff. Dkt. #23 at 14-15. Defendants claim that under Arizona law promises of future conduct can only form the basis for fraud if Plaintiff can show that such statements were made "with the present intent not to perform." *Id.* (citing *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 829 P.2d 1253, 1260 (Ariz. Ct. App. 1992)). Defendants argue that the facts in the complaint show that Defendants continued making payments on the Note for four months after Plaintiff assigned the Note to PFC, and that these facts preclude a finding that Defendants intended to defraud Plaintiff at the time of their statement to him. *Id.* Defendants further claim that the economic loss rule bars Plaintiff from recovering purely economic damages in a tort claim for fraud, rather than in a claim for breach of contract. Dkt. #23 at 12-13 (citing *Carstens v. City of Phoenix*, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003)).

The Court finds that the facts alleged in the complaint, taken as true, are sufficient to allow the Court to draw a reasonable inference of wrongdoing. The complaint alleges that Defendants falsely promised to continue making payments on the Note when in fact they did not intend to make such payments. Dkt. #1, ¶¶ 31-32. The complaint states a claim for relief that is plausible on its face.

Defendants' argument that the four payments Element made on the Note after its assignment to PFC forecloses a finding of intentional misrepresentation is not persuasive. When the facts in the complaint are taken as true, it remains plausible that Defendants, at the time of their statement to Plaintiff, intended to make payments on the Note for a few months, as promised, but did not intend to pay the entirety of their obligation to PFC. The complaint

further alleges that Defendants had a motive to defraud Plaintiff, namely in order to "harm and weaken Plaintiff in anticipation of another, separate and independent legal dispute between Plaintiff and Defendant Element." Dkt. #1, ¶ 36. Plaintiff has sufficiently pled that Defendants intentionally deceived Plaintiff.

Defendants also argue that the economic loss rule bars Plaintiff's claim for intentional fraud. Dkt. #23 at 12-13. Generally, the economic loss rule "bars a party from recovering economic damages in tort unless accompanied by a physical harm." *Carstens*, 75 P.3d at 1083. The rule recognizes the difference between contract law and tort law and requires a plaintiff seeking to recover only "the benefit of his bargain" to pursue his claims in contract rather than in tort. *Id.* at 1084. Because fraud is a tort claim and the complaint seeks only economic damages, Defendants argue that the rule requires dismissal of Plaintiff's claim for intentional fraud. Dkt. #23 at 12-13.

As the Ninth Circuit has recognized, the economic loss rule is often stated by courts in overly broad terms suggesting that purely economic losses can never be recovered in tort. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 875 (9th Cir. 2007). Such broad statements are inaccurate because "[t]ort law has traditionally protected individuals from a host of wrongs that only cause monetary damage." *Id.* Intentional fraud is one such wrong that often results in economic damage to the injured party. *Id.* To hold broadly that the economic loss rule precludes recovery of all purely economic damages arising in any tort claim would essentially eviscerate the tort of intentional fraud altogether. *KD & KD Enter., L.L.C. v. Touch Automation L.L.C.*, 2006 WL 3808257, at *1 (D. Ariz. Dec. 27, 2006).

Defendants' citations to case law on the economic loss rule do not require dismissal of Plaintiff's claim for intentional fraud. The cases Defendants cite only demonstrate the use of the economic loss rule to bar claims for negligence. *See Carstens*, 75 P.3d at 1083; *Hayden Bus. Ctr. Condos. Ass'n v. Pegasus Dev. Corp.*, 105 P.3d 157, 162 (Ariz. Ct. App. 2005). Defendants have not cited, and the Court has not found, any cases in Arizona or elsewhere using the economic loss rule to bar a claim for intentional misrepresentation. In fact, several jurisdictions have explicitly held that intentional misrepresentation falls outside

the scope of the economic loss rule. *See, e.g.*, *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 278-79 (S.D.N.Y 2004); *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532, 543 n. 3 (Fla. 2004); *In re Chi. Flood Litig.*, 680 N.E.2d 265, 274-75 (Ill. 1997); *Huron Tool & Eng'g Co. v. Precision Consluting Servs., Inc.*, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995).

In rare cases, the economic loss rule has been used to bar a party from seeking to enforce the terms of a contract through a claim for fraud. *See Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480-81 (9th Cir. 1995) (holding under Arizona law that a plaintiff could not use tortious breach of warranty and negligent misrepresentation claims to recover purely the "benefit of his bargain" when plaintiff felt that defendant's performance did not comply with the terms of the contract between the parties). However, *Apollo Group* is distinguishable from the present case because Plaintiff does not claim that terms within the Stock Agreement – the contract between parties – are the basis for his misrepresentation claims. Although Plaintiff would be required to use contract law to enforce the duties imposed on Defendants by the Stock Agreement, Plaintiff is entitled to use tort law, including a claim for intentional fraud, to enforce the separate legal duty on Defendants not to engage in deliberate fraud. *Touch Automation*, 2006 WL 3808257 at *2. Plaintiff states a plausible claim for relief because he alleges that Defendants, over and above the terms of the Stock Agreement, intentionally misrepresented that Element would continue making payments on the Note if Plaintiff assigned the Note to PFC. This claim is not barred by the economic loss rule.

### 4. Count 4 - Fraud by Negligent Misrepresentation.

Defendants argue that Plaintiff's claim for fraud by negligent misrepresentation should be dismissed because the statement at issue is a promise of future conduct that can never form the basis for negligent misrepresentation. Dkt. #23 at 13-14 (citing *McAlister*, 829 P.2d at 1260). Defendants also argue that the economic loss rule bars this claim. *Id.* at 12-13 (citing *Carstens*, 75 P.3d at 1083).

1       Defendants are correct that under Arizona law "a promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister*, 829 P.2d at 1260. The statements relied on by Plaintiff in the complaint were promises of future conduct that cannot support a negligent misrepresentation claim in Arizona. Dkt. #1, ¶ 38. Plaintiff provides no response to Defendants' claims regarding Arizona law on this issue and Plaintiff's citations to California law are inapplicable. The Court finds that Defendants' motion to dismiss count four of the complaint should be granted.

**V.     Plaintiff's Request for Leave to Amend.**

      Plaintiff has requested leave to amend the first amended complaint where the Court has found it insufficient to state a claim upon which relief may be granted. Dkt. #24 at 18. Plaintiff's request for leave to amend is denied because Plaintiff has failed to comply with Local Rule 15.1.

      **IT IS ORDERED** that Defendants' motion to dismiss (Dkt. #23) is **granted in part and denied in part** as set forth in this order.

      DATED this 18th day of June, 2009.

*David G. Campbell*
David G. Campbell
United States District Judge